**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 22, 2025**

# In the Court of Appeals of Georgia

A25A0742. BURSE v. THE STATE.

PIPKIN, Judge.

This much-delayed appeal follows a habeas court's 2024 order granting Appellant Nicholas Burse an out-of-time appeal. The crimes occurred on March 7, 2012, at a gas station convenience store. On April 3, 2012, a Walker County grand jury indicted Appellant for the armed robbery of cashier Laura Patterson (Count 1), aggravated assault with a deadly weapon against her (Count 2), aggravated assault with intent to rob her (Count 3), possession of a firearm during the commission of the armed robbery of Patterson (Count 4), possession of a firearm during the commission of aggravated assault against Patterson (Count 5), and possession of a firearm by a convicted felon (Count 6). On April 19, 2012, Appellant waived arraignment and entered a plea of not guilty on all counts.

At a trial from November 26 to 28, 2012 , the jury found Appellant guilty of Counts 1 through 5 but deadlocked on the bifurcated felon-in-possession charge, which the trial court then dismissed at the State's request. The trial court merged the aggravated assault verdicts into the armed robbery conviction, merged the related firearm-possession verdict into the conviction for possession of a firearm during the commission of armed robbery, and sentenced Appellant to serve life in prison for armed robbery followed by five years consecutive for the firearm-possession-during-armed-robbery conviction.[1]

In his brief on appeal, Appellant sets out 11 enumerations of error. The State concedes, and we agree, that the trial court committed plain error by instructing the jurors that they could find Appellant guilty of possession of a firearm during the commission of a felony if Appellant possessed a toy gun rather than an actual firearm.

---

[1]Following his 2012 convictions, Appellant failed to file a timely and valid motion for new trial or notice of appeal. More than a decade later, on March 22, 2024, the habeas court granted Appellant's petition for habeas corpus. The habeas court found that Appellant was deprived of his right to a direct appeal due to his trial counsel's ineffective assistance and, as a remedy, authorized Appellant to file a motion for new trial or notice of appeal in the trial court within 30 days. However, the habeas court's order was "misdirected," so on September 20, 2024, the habeas court entered an order vacating and reentering its order granting habeas relief. Ten days later, on September 30, 2024, Appellant filed a timely notice of appeal in the trial court, resulting in this appeal.

Accordingly, we reverse Appellant's conviction and sentence on Count 4 for possession of a firearm during the commission of armed robbery.[2] However, as explained below, Appellant's remaining enumerations of error are either moot or lack merit, and we therefore affirm his conviction and sentence for armed robbery.

1. The State concedes, and we agree, that the trial court committed plain error when, in response to a jury question during deliberations, the court instructed the jurors that they could find Appellant guilty of possession of a firearm during the commission of a felony based on possession of a toy gun rather than an actual firearm. It was well established by the time of Appellant's trial in 2012 that possession of a toy gun would not support a conviction for possession of a firearm during the commission of a felony. See OCGA § 16-11-106 (b) (1) (making it a crime for any person to "have on or within arm's reach . . . a firearm . . . during the commission of, or the attempt to commit[,] [a]ny crime against or involving the person of another"). See also OCGA § 16-11-106 (a) ("For the purposes of this Code section, the term 'firearm' shall include stun guns and tasers."); *Fields v. State*, 216 Ga. App. 184, 187 (1) (453 SE2d 794) (1995) (holding that, except as stated in OCGA § 16-11-106 (a), the term

_____

[2]We also reverse the resulting "unmerged" guilty verdict on Count 5 for possession of a firearm during the commission of aggravated assault.

3

"firearm" in OCGA § 16-11-106 means "weapons which discharge a projectile by force of gunpowder," and further holding that possession of a BB gun will not support a conviction under OCGA § 16-11-106). Accordingly, we reverse Appellant's conviction and sentence for possession of a firearm during the commission of armed robbery, as well as the resulting unmerged guilty verdict for possession of a firearm during the commission of aggravated assault. See *Johnson v. State*, 309 Ga. App. 655, 656 (1) (710 SE2d 857) (2011) (reversing conviction under OCGA § 16-11-106 where the State conceded on appeal that the defendant's possession of a BB gun would not support a conviction for violating OCGA § 16-11-106). Appellant's other two enumerations of error challenging the firearm-possession verdicts are therefore moot, and we will not discuss them further.

2. Two of Appellant's other enumerations of error are moot because they challenge the guilty verdict for aggravated assault with a deadly weapon, which the trial court merged into Appellant's armed robbery conviction. See *Arnsdorff v. State*, 321 Ga. 880, 881 n.2 (1) (917 SE2d 599) (2025) (holding that the defendant's challenges to guilty verdicts for aggravated assault and other crimes that merged were moot). Accordingly, we will not further address these two enumerations of error.

4

3. That leaves only Appellant's enumerations of error challenging his conviction and sentence for armed robbery. First, Appellant contends that the indictment was defective because the number of grand jurors who considered the evidence against him fell one person short of the minimum necessary to constitute a grand jury. Next, Appellant contends in five enumerations of error that he was denied the effective assistance of counsel. Both claims lack merit.

(a) *Defective Indictment.* As Appellant correctly notes, OCGA § 15-12-61 (a) specifies that "[a] grand jury shall consist of not less than 16 nor more than 23 persons" and that "[t]he votes of at least 12 grand jurors shall be necessary to find a bill of indictment." Appellant argues that "it appears" that only 15 grand jurors were present when the grand jury voted to indict him, although he acknowledges that a 16th grand juror "may have been present"; according to Appellant, the 16th grand juror's "name was crossed off as not being present" and initialed like "the names of ten other grand jurors who were not present," but "then the word 'present' was written next to [the 16th grand juror's] name in parentheses." Whatever the case may be, Appellant forfeited this claim by failing to raise it in a motion to dismiss the indictment filed within ten days after he waived arraignment. See OCGA § 17-7-110 ("All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the

5

date of arraignment, unless the time for filing is extended by the court."); *Bighams v. State*, 296 Ga. 267, 269 (2) (765 SE2d 917) (2014) ("[T]o be cognizable, most attacks on an indictment, including a challenge to the composition of the grand jury that returned it, must be brought within ten days of arraignment, unless the trial court extends that deadline."). See also id. at 270 n.4 (2) ("In cases where defendants have waived arraignment, the ten-day period in which defendants must file pretrial motions begins on the date that the waiver of arraignment is filed."). Accordingly, this claim provides no basis for reversal.

(b) *Ineffective Assistance of Counsel.* Appellant contends that he was denied the effective assistance of counsel in five ways. To prevail on this claim, Appellant is "required to prove both that his counsel's performance was professionally deficient," *Romer v. State*, 293 Ga. 339, 334 (3) (745 SE2d 637) (2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)), and that, "but for [his counsel's] unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different," *Baker v. State*, 293 Ga. 811, 814 (3) (750 SE2d 137) (2013) (citing *Strickland*, 466 U.S. at 694 (III) (B)). "[D]ecisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent

attorney would have followed such a course." *Smith v. State*, 298 Ga. 406, 412 (3) (a) (782 SE2d 269) (2016) (citation and punctuation omitted). In examining an ineffectiveness claim, we "need not 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Baker*, 293 Ga. at 815 (3) (quoting *Strickland*, 466 U.S. at 697 (IV)).

(i) First, Appellant contends, cryptically, that his trial counsel was professionally deficient in "fail[ing] to advise him of the expiration date on the State's plea offer." However, Appellant points to no evidence in the record that his experienced trial counsel failed to inform him of an expiration date on the State's plea offer. See Court of Appeals Rule 25 (d) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration."). Moreover, the record shows that, on the first day of trial, Appellant signed a form acknowledging that the State had offered to recommend a total sentence of 25 years in prison with the first ten years in confinement if he pled guilty to all six counts of the indictment. Appellant nevertheless asserted that he was not willing to "waive [his] right to trial" and instead would "insist on being tried," and he acknowledged that if he was tried on the indictment, the State would withdraw its

recommendation. Thus, Appellant has failed to carry his burden to show deficient performance by counsel from the record. See *Brown v. State*, 307 Ga. 24, 32 n.4 (6) (834 SE2d 40) (2019) (noting that an appellate court "is not required to scour the record [to find] support" for a defendant's claim of ineffective assistance of counsel). Accordingly, he has failed to show that he received ineffective assistance of counsel in this regard. See *Baker*, 293 Ga. at 815 (3) (quoting *Strickland*, 466 U.S. at 697 (IV)).

(ii) Second, Appellant contends that his trial counsel was professionally deficient in failing to object to the admission of State's Exhibit 2. At trial, Patterson testified that shortly after 1:00 a.m., Appellant entered the store, asked for a Cigarillo, and paid for the Cigarillo with change. Patterson said that as soon as she opened the cash register, Appellant pulled a large gun out of his jacket with his right hand and pointed it at her "really really close," used his left hand to reach over the cash register and keep the cash drawer from closing, and said, "Give me your money . . . hurry up." Patterson testified that after she emptied the cash register of all the bills and put the cash in Appellant's left hand, he walked out of the store, got into the driver's seat of a running vehicle with regular customer Lois Frady sitting in the passenger seat, and drove off. According to Patterson, she got a good look at the gun, which she described as all black and made of metal with holes at the end of the barrel, a handle where

Appellant had his hand on the trigger, and a short clip. She testified that when Appellant pulled the gun out of his jacket, it hit the counter and "made a big old thump." Patterson explained that she looked online to see if she could find a picture of the gun and found a picture of a gun that was similar. The State then showed her what was marked as State's Exhibit 2, and she identified it as the picture she found of a gun similar to the one that Appellant used to rob her. State's Exhibit 2 was then admitted into evidence without objection and shown to the jury.

Appellant has failed to provide us with his trial counsel's explanation for not objecting to State's Exhibit 2, supported by citations to the record, so we must presume that her decision not to object was conscious and strategic. See *Newman v. State*, 309 Ga. 171, 175–76 (2) (a) (844 SE2d 775) (2020). Moreover, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Smith*, 298 Ga. at 412 (3) (a) (citation and punctuation omitted). Appellant's threadbare argument concerning State's Exhibit 2 has not persuaded us that it was patently unreasonable for his trial counsel not to object to its admission. See *Blalock v. State*, 320 Ga. 694, 697 (2) (911 SE2d 628) (2025) ("[D]eficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel

to have performed." (citation and punctuation omitted)). Thus, Appellant has not carried his burden to show deficient performance. See *Brown*, 307 Ga. at 32 n.4 (6). Accordingly, he has failed to demonstrate that he received ineffective assistance of counsel in this regard. See *Baker*, 293 Ga. at 815 (3) (quoting *Strickland*, 466 U.S. at 697 (IV)).

(iii) Third, Appellant contends that his trial counsel was professionally deficient in failing to object to Detective Herpst's testimony that Appellant's "appearance in court matched that of the robber in the [convenience store] surveillance video." However, this argument mischaracterizes Det. Herpst's testimony. Det. Herpst testified about Appellant's appearance on March 20, 2012, when he interviewed Appellant in Walker County following Appellant's arrest in Chattanooga, Tennessee and extradition back to Georgia. At trial, the State asked Det. Herpst if he "had an opportunity, once the defendant arrived in Walker County, to see him," and whether, as he "personally viewed the defendant[,] . . . [the defendant] match[ed] the physical description [of the robber] that . . . [Det. Herpst] viewed on the video tape" from the convenience store. Det. Herpst responded, "That is correct . . . ." Det. Herpst was never asked to comment on Appellant's appearance in court or whether Appellant's appearance in court matched the appearance of the robber in the surveillance video.

Appellant's trial counsel obviously was not professionally deficient in failing to object to testimony by Det. Herpst that Det. Herpst did not give. See *Grant v. State*, 305 Ga. 170, 177–78 (5) (e) (824 SE2d 255) (2019) (holding that a mischaracterization of the record will not support a claim of ineffective assistance of counsel), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 23 (838 SE2d 808) (2020). Accordingly, Appellant has failed to demonstrate that he received ineffective assistance of counsel in this regard. See *Baker*, 293 Ga. at 815 (3) (quoting *Strickland*, 466 U.S. at 697 (IV)).

(iv) Fourth, Appellant contends that his trial counsel was professionally deficient in "failing to object to the trial court's [jury] instruction on armed robbery" on the basis that it was "not tailored to the allegations of the indictment." We disagree.

OCGA § 16-8-41 (a) says: "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." Count 1 of the indictment alleged that Appellant committed armed robbery by "tak[ing] United States currency from the immediate presence of Laura Patterson by the use of a handgun, an offensive

weapon," "with intent to commit theft." The trial court charged the jury as follows

on armed robbery:

> As to the specific offenses, ladies and gentlemen, count one charges armed robbery, so I needs to define that for you. A person commits armed robbery when with intent to commit theft that person takes property of another from the person or the immediate presence of another, by use of an offensive weapon or any replica, article or device having the appearance of such a weapon. An offensive weapon is any object, device or instrument which, when used offensively against a person, is likely to or gives the appearance of being likely to, or actually does result in death or serious bodily injury. The character of a weapon may be established by direct or circumstantial evidence.

The trial court also instructed the jury that "the charges contained in the bill of

indictment coupled with his pleas of not guilty form the issues that the jury must

resolve in arriving at verdicts in these cases"; that "[n]o person can be convicted of

any crime unless and until each element of the crime, as charged, is proven beyond a

reasonable doubt"; that "[t]he burden of proof rests upon the State to prove every

material allegation of the indictment and every essential element of the crime charged,

again beyond a reasonable doubt"; and that "if as to each individual count of this

indictment you find beyond a reasonable doubt that the defendant did commit the

offenses set out in that particular count, then in that event you would be authorized

to . . . find the defendant guilty." Importantly, the court sent the indictment out with the jury for use during deliberations.

Appellant argues that the armed robbery instruction "authorized the jury to convict if they found [Appellant] used an object having the appearance of a gun, a manner not alleged in the indictment"; that "[t]rial counsel had a duty to object"; that "[s]he did not"; and that "[a]s such, her performance fell below acceptable standards." However, at the time of Appellant's trial in 2012, it was well established that "[i]t is not usually cause for new trial that an entire Code section is given . . . even though a part of the charge may be inapplicable under the facts in evidence." *Keller v. State*, 245 Ga. 522, 522 (265 SE2d 813) (1980). Moreover, this Court had held, in a case where the defendant was indicted for armed robbery "by use of a handgun, the same being an offensive weapon," that it was not error to instruct the jury "on the entire armed robbery statute," including its reference to "any replica, article or device having the appearance of such a weapon," where, among other things, the trial court sent the indictment out with the jury during deliberations. See *Hambrick v. State*, 204 Ga. App. 668, 671 (4) (420 SE2d 308) (1992). In light of this case law, Appellant's trial counsel reasonably could have concluded that the trial court would reject an objection to the armed robbery instruction based on the instruction's failure to track

13

the language of the indictment, and it is not deficient performance for an attorney to refrain from making an objection that she reasonably believes will be overruled. See *Moss v. State*, 298 Ga. 613, 618 (5) (b) (783 SE2d 652) (2016) ("A lawyer is not required to make an objection that he reasonably believes will fail, and to demonstrate constitutionally deficient performance, Appellant must show that no competent attorney would think that the objection in question would have failed." (citing *Premo v. Moore*, 562 U.S. 115, 124 (131 SCt 733, 178 LE2d 649) (2011))). Thus, Appellant has not established that his trial counsel provided ineffective assistance in this respect. See id.

(v) Fifth, Appellant contends that his trial counsel was professionally deficient in failing to prepare and file a timely motion for new trial and in failing to request that the trial transcript be prepared for Appellant's use in connection with a motion for new trial and appeal. It is true that Appellant received ineffective assistance of counsel in this regard, but that constitutional violation has already been remedied by the habeas court's order granting him an out-of-time appeal. Accordingly, this claim provides no basis for reversal. See *Schoicket v. State*, 312 Ga. 825, 829 (1) (865 SE2d 170) (2021) ("[R]emedies for ineffective assistance of counsel should be tailored to the particular violation.").

4. As explained above, the State concedes, and we agree, that the trial court committed plain error by instructing the jurors that they could find Appellant guilty of possession of a firearm during the commission of a felony for possessing a toy gun rather than an actual firearm. We therefore reverse his conviction and sentence on Count 4 for possession of a firearm during the commission of armed robbery, as well as the unmerged guilty verdict on Count 5 for possession of a firearm during the commission of aggravated assault. Appellant's remaining enumerations of error are either moot or lack merit with respect to his conviction and sentence for armed robbery, which we therefore uphold. Accordingly, we affirm in part and reverse in part the trial court's judgment.

*Judgment affirmed in part and reversed in part. McFadden, P. J., and Hodges, J., concur.*